NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0278n.06

Case No. 25-3878

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| LUIS MIGUEL NAVA-HERNANDEZ, | ) | |
| Petitioner, | ) | |
|  | ) | |
| | ) | ON PETITION FOR REVIEW |
| v. | ) | FROM THE UNITED STATES |
| | ) | BOARD OF IMMIGRATION |
| TODD W. BLANCHE, Acting U.S. Attorney General, | ) | APPEALS |
| | ) | |
| Respondent. | ) | OPINION |

Before: BOGGS, KETHLEDGE, and THAPAR, Circuit Judges.

THAPAR, Circuit Judge. Luis Miguel Nava-Hernandez, a Mexican national, illegally entered the United States. After the government began deportation proceedings, Nava-Hernandez sought to cancel his removal because he alleged that his mother would suffer exceptional and extremely unusual hardship if he left. But an immigration judge and the Board of Immigration Appeals determined that he couldn't meet the statutory standard for cancellation. We agree and deny his petition for review.

I.

Luis Miguel Nava-Hernandez, who is a Mexican citizen, illegally entered the United States more than two decades ago. During his time here, he obtained a Kentucky driver's license and a Social Security card under a fake name while falsely claiming to be an American citizen.

Eventually, the government sought to remove him from the country. Nava-Hernandez conceded that he was removable but applied for cancellation of removal. 8 U.S.C. § 1229b(b)(1).

Nava-Hernandez argued that being sent back to Mexico would cause "exceptional and extremely unusual hardship" to his mother, who is a lawful permanent resident of the United States. AR 195; 8 U.S.C. § 1229b(b)(1)(D). At an immigration hearing, Nava-Hernandez explained that his mother lives with his brother and sister-in-law. He testified that his mother suffered a heart attack and has a few "illnesses," including high blood pressure and cholesterol. AR 116. To help with her medical care, Nava-Hernandez claimed that he provides his mother with about $500 a month. So he argued that if he were removed to Mexico, his mother would suffer extreme hardship that justifies canceling his removal.

But the immigration judge concluded Nava-Hernandez hadn't met the statutory standard for cancellation. The judge determined, based on Nava-Hernandez's own testimony, that his brother and sister-in-law could take care of his mother without his financial assistance. The judge also noted that Nava-Hernandez hadn't provided any documentation of his mother's medical bills or his contributions to paying them. So the judge denied Nava-Hernandez's application because his removal wouldn't cause her "exceptional and extremely unusual hardship." AR 13–14. The judge ordered Nava-Hernandez to voluntarily depart the country within 60 days or else face removal.

Nava-Hernandez appealed that decision to the Board of Immigration Appeals, but the Board affirmed the immigration judge's determination and ordered him removed. Nava-Hernandez then filed a timely petition for review of the Board's decision.

II.

An applicant for cancellation of removal must show:  (1) he was continuously present in the United States for at least 10 years immediately before his application, (2) he had good moral character during that period, (3) he had no convictions for specified offenses, and (4) his "removal would result in exceptional and extremely unusual hardship" to his spouse, parent, or child who is a United States citizen or lawful permanent resident.  8 U.S.C. § 1229b(b)(1).  The immigration judge found that Nava-Hernandez met the first three requirements, but not the fourth.

To meet the fourth requirement, Nava-Hernandez needed to show that his mother would face hardship that is "significantly different from or greater than" what a deported alien's relative would ordinarily experience.  *Moctezuma-Reyes v. Garland*, 124 F.4th 416, 422 (6th Cir. 2024).  That's a "difficult burden."  *Id.*  After all, deportation ordinarily inflicts some level of hardship on family members.  *Id.*  So the extraordinary relief of canceling removal requires that a family member's hardship far exceed those common adversities.

Because the Board adopted the immigration judge's reasoning, we review the immigration judge's findings as part of the Board's final decision.  *Sy v. Bondi*, 168 F.4th 828, 834 (6th Cir. 2026).  We don't have jurisdiction to review the agency's factual findings, so we take them as true.  *Wilkinson v. Garland*, 601 U.S. 209, 225 (2024).  We then determine whether substantial evidence supports the agency's conclusion that these undisputed facts don't amount to hardship.  *Baltazar Us v. Blanche*, 174 F.4th 509, 512–13 (6th Cir. 2026).  Under that deferential standard, the agency's conclusion must stand "unless any reasonable adjudicator would be compelled to conclude to the contrary."  *Id.* at 513 (quoting 8 U.S.C. § 1252(b)(4)(B)).  Here, a reasonable adjudicator could agree with the agency's decision, so we deny Nava-Hernandez's petition.

Start with the agency's unreviewable factual findings. It determined that Nava-Hernandez's removal wouldn't disrupt his mother's medical care. And it found that Nava-Hernandez's brother and sister-in-law could take care of his mother without his financial assistance, even though it wouldn't be "easy." AR 13.

Based on these determinations, the agency reasonably concluded that Nava-Hernandez's mother wouldn't suffer an "exceptional and extremely unusual hardship" because of his removal. After all, she will continue to have undisrupted medical care and her family's support. So Nava-Hernandez hasn't proven that his mother would suffer hardship more extreme or unusual than the ordinary family member of a deported alien. As a result, this isn't one of the "truly exceptional situations" that justifies cancellation. *Moctezuma-Reyes*, 124 F.4th at 424 (cleaned up). Thus, substantial evidence supports the agency's decision to deny Nava-Hernandez's application.

In response, Nava-Hernandez claims that his mother "requires" the extra $500 he provides every month for her continuing medical expenses. Petitioner's Br. at 13. But Nava-Hernandez provided no evidence to the agency that corroborates either his mother's bills or his financial contributions. Therefore, the Board found that his relatives "would be able to take care of [his] mother without [his] financial assistance." AR 13. And we can't review that factual finding. What's more, Nava-Hernandez hasn't shown that his deportation will prevent him from sending money to his mother. He has relatives in Mexico with steady jobs, so he likely could get a job. And his mother still owns a vacant house in her Mexican hometown in which he could likely live. So even if Nava-Hernandez doesn't earn the same income in Mexico that he does here, he could still contribute some money to his mother's medical care.

Nava-Hernandez also argues that his mother's heart problems could be worsened by the stress of her son's deportation. But he didn't present any evidence to the immigration judge linking

his deportation to a worsening of his mother's condition. And the agency determined that his mother's medical care wouldn't be disrupted by his removal. Once again, we lack jurisdiction to review that factual finding.

In short, Nava-Hernandez hasn't shown that his mother will suffer exceptional and extremely unusual financial or medical hardship because of his removal.

\*        \*        \*

We deny the petition.